In the Matter of WILLIAM L. GREENFOGEL, an Attorney, Respondent.

First Department, December 8, 1933.

*Einar Chrystie*, for the petitioner.

*John McKim Minton*, for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on December 23, 1912, at a term of the Appellate Division of the Supreme Court, First Department.

By the petition herein he is charged with professional misconduct in that he induced a client to purchase a second mortgage upon the deliberate misrepresentation that the purchase price of the property was $16,500, whereas it was not in fact more than $12,500, as respondent well knew; and that for the purpose of influencing the decision of his client and inducing him to purchase the mortgage above referred to, the respondent concealed the fact that the mortgagor was acting merely as a dummy in the transaction, and further that the property had been conveyed to the wife of the respondent.

It is further charged that the mortgage was not a purchase-money mortgage, as represented by the respondent, and that the sum of $4,500 for which it was given as security, together with the first mortgage of $8,500, exceeded the entire purchase price of the property.

Upon the trial the petition was amended on consent by adding a further charge to the effect that in appearing as attorney for his wife in an action brought to foreclose the aforesaid mortgage, the respondent prepared and served a verified answer on behalf of his wife, in which it was falsely stated that a check for $208.50, in payment of installment due January 25, 1929, had been mailed to the mortgagee on or about February 10, 1929; that thereafter

respondent's wife had been informed by the mortgagee that the check had been received but would not be used and that he would claim that a default in payment had been made; that at the time when it was alleged in said answer that the check for $208.50 was sent, the balance to the credit of the account upon which the check was drawn was only $116.24, and that said answer was prepared and served for the purpose of hindering and delaying the progress of said foreclosure action.

The respondent answered, and the matter was sent to a referee to take testimony concerning the charges and report the same to this court, together with his opinion thereon. The learned referee has duly reported, finding the respondent guilty as charged. The matter now comes before this court upon motion of the petitioner that the report of the referee be confirmed and that the court take such action as may be just and proper.

From the record herein appear the following facts, concerning which there is no controversy: In the year 1927 the premises No. 237 West One Hundred and Twenty-second street were subject to a first mortgage for $10,500, held by one Miss Gilbert, and a second mortgage which had been reduced to $2,800, held by Mrs. Kamen, the mother-in-law of the respondent herein. Miss Gilbert started foreclosure proceedings, whereupon the respondent negotiated with her attorneys with the intention of bidding in the property upon the sale and, as a condition for the adjournment of the said sale, paid $500. The respondent was unable to buy the property upon the adjourned date, and the property was sold to Miss Gilbert, the plaintiff, on September 7, 1927. On September 16, 1927, the respondent contracted to purchase the premises. On October 18, 1927, the respondent sent to Dr. Jacques P. Alper and the Repla Holding Corporation, of which he was president, clients of the respondent and who had purchased a number of mortgages in reliance upon the representations of the respondent, the following letter:

" Repla Holding Corporation:

" Gentlemen: I hereby submit to you application for second mortgage covering premises 237 West 122nd Street, in the sum of $4,500, payable $150 quarterly for three years, which is to be subject to a first mortgage in the sum of $8,500, also for three years, and this first mortgage is payable $150 every six months so that the first mortgage reduces itself $300 a year.

" This second mortgage is to be a purchase money mortgage. The contract price for the property is $16,500; the first mortgage is $8,500; the second mortgage is $4,500 so that the purchaser

puts in approximately $3,500 in cash, from which are deducted adjustments so that the net amount of the investment will be a little over $3,000.

" The property at the present time is leased for $165 a month for a three year lease.

" In consideration of your company making this loan and purchasing this mortgage, I hereby personally guarantee to you, your successors and assigns, that you will be paid the sum of $4,500, and interest, and in the event, for any reason whatsoever, you shall sustain any loss on this mortgage, I hereby personally guarantee to make good to you any such loss.

" Very truly yours,

" WLG :SG.                                    W. L. GREENFOGEL."

It is conceded by the respondent that the figures set forth in the above letter are not a correct statement of the transaction as finally consummated. Title to the property was closed on October 28, 1927. The contract of sale bore the indorsement that it had been assigned to the Loretta Company and the deed from Miss Gilbert was made to that company. The Loretta Company, upon the same date, executed the second mortgage to the Repla Holding Company and, on the same day, transferred the premises to the wife of the respondent. Dr. Alper paid to the respondent the face amount of the second mortgage, to wit, the sum of $4,500, less a charge of twelve per cent as a bonus, or $3,980. These payments were made in installments, the last one being paid on November 5, 1927. On October 31, 1927, the respondent procured an insurance policy from the Safeguard Insurance Company for $5,000 in the name of the Loretta Company, as owner, loss, if any, payable to the Repla Corporation as second mortgagee, as interest may appear. This policy, together with the mortgage, was sent to Dr. Alper by the respondent on November 16, 1927. It is conceded by the respondent that Dr. Alper, in making his mortgage investments, relied entirely upon the judgment of the respondent without making any independent investigation as to the value of the real estate or the responsibility of the mortgagor.

It is the contention of the respondent that notwithstanding the aforesaid letter is an inaccurate statement of the transaction as finally carried out, it did correctly set forth the terms thereof as then contemplated. The respondent testified that he had assigned his contract of sale with Miss Gilbert to the Delford Company, receiving on account $500, and that the terms of his contract with the Delford Company were as stated in his letter of October eighteenth to Dr. Alper. The respondent further testified that the resale of the property by him to the Delford Company fell through;

that he informed Dr. Alper of that fact and that he would take the property himself, to which Dr. Alper consented. The respondent admitted, however, that he did not inform Dr. Alper of the terms under which he was taking the property. He attempted to justify his failure so to do upon the ground that it was unnecessary, as Dr. Alper always relied upon his judgment in making similar investments.

The aforesaid explanation of the respondent is not sustained by the record. The evidence belies the existence of any contract with the Delford Company. Before the committee on grievances of the petitioner the respondent had testified that the negotiations leading up to the Delford contract had been had with one Gershon. Upon the hearings both the respondent and one Smith, president of the Delford Company, testified that Smith had acted for the latter. The respondent testified that the contract was destroyed at the request of Smith. Neither the respondent nor Smith was able to state whether the $500 alleged to have been paid on account was paid by check or cash. The $500 was not returned at the time of the alleged destruction of the contract and the Delford Company had no evidence of the payment by receipt or otherwise. The respondent produced a check dated November 4, 1927, for $450, which he testified had been given in repayment of the $500 paid October seventeenth, less $50, which the respondent claimed to have deducted for his trouble. The check was not payable to the Delford Company, but to one Mannie Baum, an officer thereof. Subsequent to the report of the referee that there was no evidence that the said check ever had been deposited to the credit of the Delford Company, upon motion of the respondent, the matter was sent back in order that the respondent might have an opportunity to furnish such evidence, and also that the aggregate amount of unsatisfied judgments against the respondent was less than appeared upon the original hearings. Such proof was adduced by respondent, but fails to affect the conclusion reached. There is no credible evidence connecting said check with the alleged Delford contract, and the record sustains the finding of the referee that there was in fact no such contract. Even if it should be assumed that there was such a contract, nevertheless the conceded facts show the respondent to have been guilty of unprofessional conduct. He induced the purchase of the mortgage upon the implied representation that the property was being purchased upon the same terms as set forth in his letter of October 18, 1927, and the deliberate concealment from his client that the purchase price was $12,500, instead of $16,500, and that the respondent had no intention of

expending $3,500 in improving the property but instead would use the money received from Dr. Alper for the purchase of the property.

With respect to the additional charge, it is sufficient to say that the record sustains the finding of the learned referee that the respondent is guilty substantially as charged.

The conclusion is inescapable that the respondent induced his client to make an investment by false representations, made deliberately, and concealed from this client material facts which should have been disclosed.

In addition, when foreclosure proceedings were brought, respondent delayed the prosecution of the action by filing an answer in which he falsely stated that a tender had been made and thereafter, while a witness in this proceeding, testified in support of such allegation and gave the same testimony a second time upon another trial, although it had previously been demonstrated by the production of a copy of the bank account of his wife that if such a check was sent as claimed by the respondent it could not have been paid in full, and hence that the tender was worthless.

The respondent should be disbarred.

MERRELL, MARTIN and TOWNLEY, JJ., concur.

Respondent disbarred.